990 F.2d 1378
 301 U.S.App.D.C. 108
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Vivian E. WARNER, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee
Cellular-10, Inc., Telesystems Communications and Mackinac
Cellular Corp Templeton, Incorporated, Macro Cellular
Partners, Cellwave, Inc., Columbus Cellular Telephone
Company and Cellular Communications, Inc., Danbury Cellular
Telephone Co., Buckhead Telephone Company, Inc., Alpha
Cellular Telephone Company, Century Cellular Corporation,
Metro Mobile CTS, Inc., Intervenors.
 No. 91-1571.
 United States Court of Appeals, District of Columbia Circuit.
 March 17, 1993.
Rehearing Denied May 28, 1993.
 
 Before MIKVA, Chief Judge, and SILBERMAN and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was heard on the record from the Federal Communications Commission, the briefs filed by the parties and intervenors and the arguments by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED that the order be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Vivian E. Warner, a disgruntled unsuccessful cellular radio license applicant, appeals an order of the Federal Communications Commission (FCC) upholding her dismissal from six license proceedings in which she submitted applications and denying her motions to revoke the licenses of two successful applicants. See In re Application of Vivian E. Warner, 6 F.C.C.R. 6033 (1991). Warner advances two grounds for reversing the FCC order: (1) her applications were dismissed prematurely, that is, before the licensees had constructed their facilities and commenced operation, and (2) the FCC should have granted her motions to revoke the licenses of the two successful applicants because they are not qualified to hold them. For the following reasons we affirm the FCC's order.
 
 
 5
 Warner first challenges the one-step licensing procedure the FCC employed in each of the licensing proceedings, specifically, the dismissal of unsuccessful applications as soon as a tentative licensee was selected and found qualified. Warner asserts the other applications, including hers, should not have been dismissed until the successful applicant for each license had completed construction of its cellular stations, the facility was operating and no challenges to the licensee's qualifications were pending. We find this argument without merit.
 
 
 6
 In by-gone days, the FCC used a two-step process to award cellular licenses. Each applicant was first required to apply for and be granted a construction permit. Once construction was complete, the applicant was required to submit a second application for the operating license itself. In 1982, however, Congress amended the FCC's statutory licensing scheme to expressly authorize (1) selection of cellular licensees "through the use of a system of random selection," provided that "[n]o license or construction permit shall be granted to an applicant selected ... unless the Commission determines the qualifications of such applicant," 47 U.S.C. § 309(i)(1), (2), and (2) elimination of the construction permit requirement for mobile stations, 47 U.S.C. § 319(d). Subsequently, in 1987, the FCC in a rulemaking proceeding revised the cellular licensing scheme to require but a single application and approval. The FCC explained:
 
 
 7
 [W]e ... believe that elimination of our dual licensing scheme in these services is in the public interest. Therefore, we will eliminate the two step application process, the application for a construction permit and application for a license to cover or operate. Applicants will be required to file a Form 401 (Application for New or Modified Radio Station Authorization) for a license. After completing construction they may merely notify us on a Form 489. We will not issue a separate authorization to operate the constructed facilities. A copy of the filed Form 489 and the license will constitute the operating authority. Cellular radio service licensees shall file a Form 489 also to notify us that they have completed construction. However, their radio station authorizations will automatically become effective thirty days after the filing date of the Form 489, unless the Commission advises the grantee to the contrary within thirty days after receipt of the Form 489, or unless a petition to defer is filed within the thirty day period.
 
 
 8
 Revision & Update of Part 22 of the Pub. Mobile Radio Rules, 95 F.C.C.2d 769, 774 (1983). The FCC revision also provided for automatic expiration of the authorization if construction was not completed on time or if the Form 489 substantially deviated from the original authorization terms. Id. Accordingly, the FCC now employs a one-step licensing process under which it accepts applications (FCC Form 401) from interested parties, selects at random, by lottery, a "tentative selectee" from the total applicant pool, determines whether the "tentative selectee" is qualified and, if so, grants the application. 47 C.F.R. § 1.823.[1] Once an application has been granted, the FCC dismisses the other applications. In re Amendment of the Commission's Rules on Cellular Radio Serv. (Erratum), 2 F.C.C.R. 4008 (1987); see also Public Notice, Report No. CL-987-101 (December 18, 1986). Upon completion of construction, the selected licensee simply notifies the FCC (on Form 489) and commences operation without further FCC action. In re Revision & Update of Part 22 of the Pub. Mobile Radio Serv. Rules, 2 F.C.C.R. 1798, 1799 (1987) (p 8). Because the FCC's procedure reflects a reasonable interpretation of the relevant statutes, it must be upheld. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984). Accordingly, we find no error in the dismissal of Warner's applications.
 
 
 9
 Warner also challenges the FCC's order insofar as it denied her motions to revoke the licenses of two successful applicants, Wyndcell Corporation (Wyndcell) and Petry Television, Inc. (Petry).[2] We reject this challenge because the FCC's decisions not to commence revocation proceedings are not reviewable here.
 
 
 10
 "[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under 5 U.S.C. § 701(a)(2)." Heckler v. Chaney, 470 U.S. 821, 832 (1985).[3] This presumption is rebuttable only when Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion." Id. at 834. Otherwise, "an agency refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of section 701(a)(2) ]" and not subject to judicial review. Id. at 835. Warner has not cited any circumscribing standards in 47 U.S.C. § 312(a), the statute governing license revocation, and has therefore failed to carry her burden of rebutting the nonreviewability presumption. Accordingly, we are precluded from reviewing the denial of her motions to revoke. Cf. New York State Dep't of Law v. FCC, No. 91-1362, slip op. at 8-15 (D.C.Cir. Feb. 9, 1993) (holding challenged FCC enforcement decisions not reviewable).
 
 
 
 [1]
 The FCC may select more than one applicant and rank them in order of selection. Id
 
 
 [2]
 In her motions, Warner challenged the financial qualifications of both Wyndcell and Petry and asserted Wyndcell was unqualified for the additional reason that a shareholder in one of its partners had violated the cross-ownership prohibition in 47 C.F.R. § 22.921(b)
 
 
 [3]
 This section exempts from the APA's provisions "agency action" that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2)